WILLIAM MCDONALD *vs.* CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA
RAILWAY COMPANY.

October 2, 1889.

Master and Servant—Negligence in Use of Turn-table—Risk of Operation not Assumed by Servant.—The plaintiff, an employe of defendant, was engaged in turning an engine upon a turn-table, with the assistance of another engine upon an adjoining track, a stick being placed between them, which was held by the plaintiff. When the pressure was applied, the engine upon the table slid or ran off, and became fast in the curb. The stick broke, and plaintiff was injured between the engines as they were suddenly brought together. The evidence tended to show that the turn-table was in bad order and unsuitable for the use required, and that the manner of operating it by the aid of another engine was authorized by the defendant. *Held,* under the evidence in the case, that whether the defendant was guilty of negligence in respect to the condition and use of the turn-table, and whether the plaintiff was chargeable with contributory negligence, were questions properly submitted to the jury. *Held also,* upon the case made by the evidence, that it was open for the jury to find that the plaintiff did not know or appreciate the risk of the work upon which he was engaged, and that in the exercise of reasonable care he was not bound to understand or appreciate the same.

Appeal by defendant from an order of the district court for Ramsey county, *Wilkin,* J., presiding, refusing a new trial after a verdict of $6,000 for plaintiff.

*J. H. Howe, C. D. O'Brien,* and *S. L. Perrin,* for appellant.

*I. V. D. Heard* and *John D. O'Brien,* for respondent.

VANDERBURGH, J. The principal questions in this case arise on defendant's exceptions to the ruling of the court in refusing to dismiss the action upon the plaintiff's evidence, and in refusing to direct a verdict upon the whole evidence in the case. The other exceptions which were taken to the admission of testimony in the case do not require any consideration, as we think the legal questions thereby presented are not doubtful or important. The discussion is therefore practically narrowed down to the question whether the decision of the trial court affirming that the verdict is supported by the evidence is

sustained by the record. Plaintiff suffered the injury complained of while in defendant's employ in assisting to turn an engine on its turn-table in East St. Paul, on the 3d day of April, 1887. He was one of several employes engaged under the direction of a foreman, whose duty it was to care for the engines in the roundhouse, and to turn the incoming or outgoing engines upon the turn-table as required. He had been so employed about three months. The evidence on material points is conflicting, but there is evidence in the case reasonably tending to prove that the turn-table, which had been in use for about seven years, was defective or inadequate and unsuitable for the use to which it was subjected; that it was too small for the class of large engines then in use; that it was raised too high in the centre, so that it was not easily kept balanced, but "tipped" or canted over to one side; that the wheels upon which it turned in the pit were much worn, and sometimes did not touch the rails; and that it was ordinarily moved with great difficulty by prying or "pinching" with iron bars placed under the wheels, so that it was a long and laborious task to turn it, when, if it had been suitable for the purpose and in good order, it could have been readily turned with levers in a few minutes. The evidence also tends to show that at the time he commenced work, and while he was there, it was the practice to call to their assistance other engines, as opportunity might offer, to aid in turning the table. The track ran close to the table, and a stick about eight feet long and four inches in diameter, prepared and kept for the purpose, was so adjusted between the engine upon the track and that upon the table as to enable the former to push the latter along on the curve a considerable distance, or till beyond reach. This mode of turning the table sufficiently appears to have been with the authority and sanction of the foreman, and was frequently resorted to while the plaintiff was there. He testifies that the foreman ordered it whenever there was a chance to get an engine for the purpose, and another witness, the engineer upon the switch-engine that assisted in turning the table when the accident occurred, testifies that the foreman had asked him to assist in the same way two months before, and that it was the practice "off and on" all winter. Notice to the defendant of the condition of the table would be presumed after a reasonable time. On

the day in question the switch-engine was passing down the track nearest the table, distant about 14 inches. Another engine had been backed out upon the turn-table, to be turned around and sent out upon the road. It was a large engine, and the tank extended beyond the table, so that the switch-engine could not pass. Thereupon the "stick" was called for, and the plaintiff and another of the employes procured it and adjusted it between the two engines in the usual way, as plaintiff testifies. Steam was thereupon applied, the turn-table moved a few feet and then "tipped," and the engine thereon ran back upon the curb, the wheels caught, and the stick broke. The two engines were suddenly brought together, and plaintiff's arm crushed between the tenders. Whether the case should have been taken from the jury involved the question of defendant's negligence as well as that of plaintiff's contributory negligence, and whether he assumed the risk of such an accident in undertaking and continuing in the employment.

1. The jury were warranted in finding from the evidence that defendant was fully cognizant of the condition of the turn-table, and the manner in which it was used and operated, and that under the circumstances the use of an engine in assisting to turn it was authorized by it. Undoubtedly the condition of the table induced the particular use, but the jury might also find that such use by the men was under legitimate orders in the course of their employment. In this case the switch-engine that was used was on its way to the coal-house for coal, and the track was obstructed by the other engine on the table, so that it could not pass. Under the evidence in the case, the court did not err in its determination that it was for the jury to consider and find what was the condition of the table, and whether its use and operation was dangerous; whether the accident was occasioned by the alleged defects therein, which caused the engine to be thrown off and stopped; and hence whether, in view of all the facts as they might find them to exist, the defendant had failed in its duty to provide suitable and proper instrumentalities and safe accommodations for their employes in the work and employment they were engaged in. When the servant is employed on or in connection with machinery in the use of which danger may arise, it is the duty

of the master to use reasonable diligence to guard against the risk of accident to his employes, and in the exercise thereof to make such seasonable repairs or changes as may be necessary to prevent or remove it. *Lake Shore, etc., Ry. Co.* v. *Fitzpatrick,* 31 Ohio St. 479, 485.

2. It is further argued that the evidence conclusively shows that the plaintiff was guilty of contributory negligence, and that the court should have taken the case from the jury for that reason; but we think the suggestions of counsel on this point are such as might more properly be made before the jury, and in our opinion the question was properly left to them. The plaintiff's evidence shows that he had been accustomed to hold the stick in the same way as he did on this occasion, and that it was placed in the usual position. He had not been instructed how to hold it, or warned to do the work differently. He had never known an engine to slip off, or the table to tip in that way. His co-employe, one Alvin, as he says, placed one end of the stick against the draw-bar of the engine on the turn-table, and he placed the other end against the corner of the switch-engine, and the foreman, as he says, then ordered Alvin to come away, but not him; and another witness testifies, without objection, that he regarded Alvin's position dangerous, but not plaintiff's. It appeared to plaintiff to be a proper way to push the table round, and he had no apprehension of danger. If his testimony is true, the mode adopted was not unusual or unauthorized. Whether the stick was negligently placed, and whether the plaintiff's conduct was otherwise negligent under the circumstances, and how much weight should be given to his explanations, were, we think, for the jury.

3. It is also insisted that the danger of accident in the use of the turn-table was among the risks of his employment assumed by plaintiff, and the jury should have been so instructed, and that the verdict should be set aside on that ground. It is the duty of the master to be careful that his servant is not induced to work under the notion that machinery or the instruments upon or with which he is to work, or the place where he is to work, is suitable and safe, when in fact the master knows, or ought to know, that it is not. The plaintiff might assume, unless the danger was patent, that the proper officer under-

stood the nature of the business, and approved the method of operating the table which was adopted, and was in a better position to understand the risks.    The situation or circumstances may be such that while the character of machinery and its mode of operation may be sufficiently obvious to the senses, yet the risks attending its use may not be appreciated or understood by the employe without proper explanation or warning.    It is the duty of the servant to use reasonable care to inform himself in respect to the hazards to which he may be exposed, but unless the risks are patent he is not under the same obligation to know the nature and extent thereof as is the master.  *Russell* v. *Minn. & St. Louis Ry. Co.*, 32 Minn. 230, (20 N. W. Rep. 147;) *Wuotilla* v. *Duluth Lumber Co.*, 37 Minn. 153, (33 N. W. Rep. 551.) We are of the opinion that upon the evidence, some of which is referred to above, the court was not warranted in conclusively presuming that the plaintiff knew or was bound to know the hazards of his position, or that any such accident was likely to happen.    If the evidence in his behalf is true, it is not probable that the danger of such an accident had ever occurred to him, and, with his limited knowledge of the operation of mechanical forces, it was perhaps not likely to be suggested to him.    But whether he did or did not understand and appreciate the danger of working where and in the manner he did, or, in the exercise of reasonable care, ought to have known it, was, under the evidence in this case, a question for the jury.    *Lake Shore, etc., Ry. Co.* v. *Fitzpatrick*, 31 Ohio St. 479, 487.    In a late Massachusetts case, the court, in passing upon the same question, say :    The plaintiff undertook what proved to be a dangerous duty. "The material point of difference between this case and many others is that here it is open for the jury to find that the plaintiff did not know or appreciate the risk of the work upon which he was engaged, and that in the exercise of due care he was not as a matter of law bound to know and appreciate the same."   *Ferren* v. *Old Colony R. Co.*, 143 Mass. 197, (9 N. E. Rep. 608.)

Order affirmed.