# MARIETTA GLASS MANUFACTURING COMPANY v. BENNETT.

[No. 8,346.   Filed October 16, 1914.   Rehearing denied April 13, 1915.   Transfer denied January 7, 1916.]

1. NEGLIGENCE.—*Essential Elements.*—To constitute actionable negligence, there must have been a duty owing from defendant to the plaintiff to protect him from the injury of which he complains, a failure by defendant to perform that duty, and an injury to plaintiff resulting from such failure. p. 442.

2. MASTER AND SERVANT.—*Inexperienced Servant.*—*Masterial Duty.*—It is the duty of the master, before exposing an inexperienced servant to the hazards of a dangerous service, to warn him and give him such instructions as will enable him to avoid injury, unless both the danger and the means of avoiding it are apparent. p. 442.

3. MASTER AND SERVANT.—*Temporary Change of Employment.*—*Assumption of Risk.*—*Masterial Duty.*—*Liability.*—Where the master orders a servant temporarily to do other work, involving different or greater dangers than those incident to the work within the scope of his employment, the servant does not by reason of the implication arising from the contract of employment assume the risk incident to such temporary work, and on assuming the latter duties the master must, if the servant is inexperienced, warn and instruct him, and the master's failure in this respect, if resulting in injury to the servant, renders him liable. p. 443.

4. MASTER AND SERVANT.—*Injuries to Servant.*—*Inexperienced Servant.*—*Temporary Change of Employment.*—*Complaint.*—Where it was reasonably clear that each paragraph of complaint, when considered in its entirety, proceeded on the theory that plaintiff was taken from his regular employment and required to perform work in the performance of which he had no previous experience, and which exposed him to dangers of which he was wholly ignorant, and that

defendant failed to warn or instruct him as to such new dangers, etc., neither paragraph was objectionable on the theory that the allegation that plaintiff was "transferred" to such new employment means that the change was permanent and contradicts the idea that plaintiff was injured while temporarily performing work not connected with his regular employment, and especially was the objection untenable in view of other allegations showing that by such transfer plaintiff was exposed to unusual dangers not ordinarily incident to such new work.  pp. 443, 446.

5.  MASTER AND SERVANT.—*Change of Employment.*—*Hidden Dangers.*—*Masterial Duty.*—*Assumption of Risk.*—Where a servant is transferred from his regular employment and required to perform work involving risks not ordinarily incident to the employment, of which he has no knowledge, and which would not have been contemplated or assumed by one originally employed at such work, it is the duty of the master, having knowledge of such dangers, to disclose them to the servant, and the latter will not be held to have assumed the risk of dangers unknown to him and not discoverable by him in the exercise of ordinary care.  p. 444.

6.  MASTER AND SERVANT.—*Injuries to Servant.*—*Knowledge of Defect.*—*Assumption of Risk.*—A servant is not necessarily to be charged with assumption of the risks growing out of a defect of which he had knowledge, or of which by the exercise of ordinary care he could have known, since, by reason of ignorance or want of experience, the risks and hazards may not have been so open and apparent as to be appreciated by him.  p. 446.

7.  MASTER AND SERVANT.—*Injuries to Servant.*—*Verdict.*—*Answers to Interrogatories.*—Where the issues tendered by the complaint in a servant's action for injuries sustained while working in a glass factory were such that a general verdict thereon amounted to a finding that the glass plaintiff was required to handle was extremely rotten and brittle, which was a condition not ordinarily incident thereto, and that he was required to handle it under conditions of temperature that made it unusually liable to break, answers to interrogatories returned by the jury showing that plaintiff was of mature age and had ordinary intelligence and knew that glass would break and that its edges would cut, etc., but from which it appeared that plaintiff lacked knowledge and experience with respect to handling glass and the dangers incident thereto, were not inconsistent with such general verdict.  p. 446.

8.  MASTER AND SERVANT.—*Injuries to Servant.*—*Harmless Error.*—*Instructions.*—In a servant's action for personal injuries sustained in handling glass, an instruction that plaintiff was entitled to recover if the injuries were directly or proximately caused by the negligence complained of, unless it was found that he was guilty of contributory negligence, though failing to mention assumption of risk, was harmless, in view of the findings of the jury in answer to interrogatories, and in view of the fact that the negligence charged

Marietta Glass Mfg. Co. *v.* Bennett—60 Ind. App. 435.

was such that to make proof thereof plaintiff was required to show a state of facts necessarily relieving him from assumption of risk. p. 447.

9.  MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Instructions.*—An instruction stating that generally a servant assumes all the ordinary risks incident to his employment, and those which are open and obvious and can be seen and appreciated by a person of ordinary intelligence, but that he does not assume the extraordinary risks of which he is ignorant and which are not obvious and open to the observation and which can not be readily seen and appreciated by a person of ordinary intelligence, and that if it was found that the danger encountered by the plaintiff in his work of carrying and handling glass was extraordinary and not open and obvious and could not have been readily seen and appreciated by a person of ordinary intelligence the plaintiff did not assume the risk so as to preclude recovery, was not misleading, and though omitting the question of actual knowledge, was harmless in view of express findings that plaintiff did not know of the dangers of handling glass and that such ignorance was due to lack of experience. p. 448.

10.  MASTER AND SERVANT.—*Injuries to Servant.—Change of Employment.—Assumption of Risk.—Instructions.*—In an action for injuries to a servant who had been taken from his regular employment and directed to assist in carrying and handling glass, an instruction stating that if it was found that plaintiff was directed by defendant to carry and handle glass and that such glass was rotten, defective and unusually brittle, dangerous and liable to break in handling, of which facts the defendant knew or should have known, and that the plaintiff was ignorant thereof and had no notice or warning, and that while plaintiff was carrying and handling said glass and using due care said glass broke on account of its rotten, defective and unusually brittle condition, and injured plaintiff as alleged, the defendant would be liable, was not objectionable in omitting the question of defendant's knowledge of plaintiff's alleged ignorance. p. 449.

11.  MASTER AND SERVANT.—*Injuries to Servant.—Obedience to Specific Command.—Assumption of Risk.*—A servant may obey a specific command of the master and go into a dangerous place and perform a dangerous task without assuming the risk, unless the apparent danger is such as to deter a man of ordinary prudence from encountering it. p. 450.

12.  APPEAL.—*Review.—Harmless Error.—Instructions.*—Error, if any, in an instruction relating to the furnishing of appliances to a servant for handling glass, was harmless in view of the jury's answers to interrogatories showing that it was not the duty of the employer to furnish such appliances. p. 450.

13.  MASTER AND SERVANT.—*Specific Directions.—Presumptions as to Risks.—Instructions.*—An instruction that it is the servant's duty to obey the orders and directions of the master, and that in the

absence of notice or knowledge to the contrary he has the right to presume and to act upon the presumption that the master will not order him into a place of danger, or to perform dangerous work, without notifying him of such danger, and if the master does order him to do specified work, he has the right to presume, in the absence of knowledge or notice to the contrary, that it is reasonably safe for him to obey such orders and perform such work and that he is encountering no unusual dangers by doing, so, was a correct expression of the law and applicable to the issues in an action for injuries to a servant, who, without experience or warning, was temporarily directed to assist in handling glass under circumstances involving extraordinary and unsual risks.   p. 451.

14.   APPEAL.—*Review.*—*Refusal of Instructions.*—There is no error in the refusal of instructions shown to have been covered by the instructions given.   p. 451.

15.   APPEAL.—*Review.*—*Verdict.*—*Conclusiveness.*—Where there is some evidence to support each of the material facts on which the verdict rests, the verdict will not be disturbed on the ground of insufficiency of evidence.   p. 452.

16.   APPEAL.—*Questions Reviewable.*—*Objections to Evidence.*—No question is presented for review on alleged erroneous admission of evidence where it appears that no objection was interposed to the question put to the witness until after the answer was begun, that none was made after the answer was completed, and that there was no motion to strike out the answer or any part of it.   p. 452.

17.   MASTER AND SERVANT.—*Injuries to Servant.*—*Damages.*—*Evidence.*—*Earning Capacity.*—In a servant's action for personal injuries proof of plaintiff's ability to earn money before his injury need not be confined to the particular work he was doing when injured.   p. 453.

From Hancock Circuit Court; *Robert L. Mason,* Judge.

Action by Fred Bennett against the Marietta Glass Manufacturing Company.   From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*Elmer E. Stevenson,* for appellant.
*Walter L. Carey,* for appellee.

HOTTEL, J.—This is an action for damages for personal injuries.   The complaint is in two paragraphs.   The averments common to both, omitting formal and other matters about which there is no controversy, are in substance as follows:   Appel-

lant is a corporation engaged in the manufacture of glass. Appellee was employed by appellant to work in its box-factory department where he was engaged in making boxes for the shipment of glass. On February 21, 1910, some time after he began work for appellant, he was transferred by appellant to what is commonly known as the lehr room of said factory, in which department appellee, with the assistance of another employe, was required to carry large plates of glass, which were about fifty inches wide, about ten feet long and about one-eighth of an inch thick; that he was required to carry the plates before they were properly cooled and while they were still hot, and the glass was rotten, defective and dangerous, and extremely liable to break in the carrying and liable to injure the persons handling the same, all of which facts appellant at all times well knew, and of which appellee was ignorant; that appellee was ignorant of the proper manner of handling the glass and of the danger of carrying the same; that he was not aware that it was rotten, defective, unsafe and liable to break and injure him; that appellant notwithstanding failed and neglected to in any manner instruct appellee as to the handling of the glass, or to give him any notice or warning whatever of the defective, rotten and unsafe condition of the glass, or of the danger of handling the same; that appellant failed and neglected to furnish appellee any appliance with which he could safely handle and carry the glass without being in great danger of being injured thereby, although such appliance should and could easily and readily have been furnished and provided by appellant as appellant at all times well knew; that appellant failed and neglected to provide appellee with any means of protection for his arms, hands and wrists while carrying the glass,

· although the same could and should have been provided as appellant well knew; that on February 22, 1910, while carrying one of the plates of glass, the glass without warning and on account of its warm, rotten, defective condition, broke and thereby cut appellee's arm and wrist and severed the ligaments, tendons, blood vessels and nerves in his wrist and thereby rendered appellee's hand paralyzed, and his arm and wrist and hand practically useless; that appellee and his assistant at the time appellee received his injuries were using due care in the handling of the glass; that appellee's injuries were all caused and were the direct result of the carelessness and negligence of appellant in ordering, directing, and requiring appellee to carry and handle the hot, rotten, defective, brittle glass, and in failing and neglecting to instruct appellee as to the handling of the same, and in failing to provide appellee with the proper protection and appliances in carrying the glass.

The second paragraph differs from the first in that it charges that when appellee was transferred to the lehr room, he, with the assistance of another of appellant's employes, was *ordered, directed* and required by appellant, and *it became his duty in said department* to carry and handle large plates of glass, etc.; that such glass was defective, rotten and *extremely* and *unusually* brittle and liable to break; that appellee was ordered, directed and required to handle such plates of glass before the same had properly cooled, and while still hot and to carry them so *that they necessarily came in contact with currents of cold air; that such cold air coming in contact with said hot glass was liable to and did many times cause such plates of glass to break into fragments and fall around the employes handling the same,* thereby rendering it very dangerous for appellant's employes to carry

and handle such plates of glass.   Knowledge on the part of appellant, and want of knowledge on the part of appellee, of said facts respecting the condition of said glass, the manner of handling it, and the dangers attendant thereon are alleged.   It is also alleged that appellant notwithstanding its knowledge failed and neglected to in any manner instruct appellee as to the handling of the glass, and failed and neglected to give him any notice or warning whatever of the defective, rotten, extremely and unusually brittle and unsafe condition of the glass, or of the danger of handling the same and exposing the same while hot to cold currents of air, although appellant at all times well knew of appellee's inexperience and ignorance concerning all these facts.

A demurrer to each of said paragraphs for insufficiency of facts was overruled and answer in general denial filed.   A trial by jury resulted in a verdict in favor of appellee for $2,000.   With the general verdict the jury returned answers to interrogatories.   Over appellant's motion for judgment on such answers notwithstanding the general verdict and for a new trial, judgment was rendered on the verdict.   The rulings on the demurrers and motions are severally assigned as error and relied on for reversal.   It is insisted by appellant that neither of the paragraphs of complaint states facts sufficient to constitute a cause of action because, (1) no actionable negligence is stated against appellant; (2) the averments of each paragraph show that appellee assumed the risk; and (3) that the facts alleged do not warrant the application of the rule, where an employer orders an employe to do something not contemplated in his regular employment.

"In every case involving actionable negligence, there are necessarily three elements essential to its

part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; and (3) an injury to the plaintiff from such failure of the defendant. When these elements are brought together, they unitedly constitute actionable negligence." *Chicago, etc., R. Co.* v. *Lain* (1908), 170 Ind. 84, 87, 88, 83 N. E. 632. See, also, *Cleveland, etc., R. Co.* v. *Morrey* (1909), 172 Ind. 513, 521, 88 N. E. 932; *Peru Heating Co.* v. *Lenhart* (1911), 48 Ind. App. 319, 329, 95 N. E. 680; *Indiana Rolling-Mill Co.* v. *Livezey* (1911), 47 Ind. App. 396, 404, 94 N. E. 732. We first inquire whether the first element is shown by the averment of each of the paragraphs of complaint. "The master may not expose an inexperienced servant, at whose hands he requires a dangerous service, to such dangers without giving him warning. He is also required to give him such instructions as will enable him to avoid injury, unless both the danger and the means of avoiding it are apparent. This duty does not extend to employes of mature age who are familiar with the work they are called on to do and the risks incident thereto, but it does extend to inexperienced employes of mature years as well as those of tender age." *Osborn* v. *Adams Brick Co.* (1913), 52 Ind. App. 175, 183, 99 N. E. 530, 100 N. E. 472. See, also, *Atlas Engine Works* v. *Randall* (1885), 100 Ind. 293, 296, 50 Am. Rep. 798; *Republic Iron, etc., Co.* v. *Ohler.* (1903), 161 Ind. 393, 402, 68 N. E. 901; *Republic Iron, etc., Co.* v. *Lulu* (1911), 48 Ind. App. 271, 276, 92 N. E. 993; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 53 N. E. 235; *Bennett* v. *Evansville, etc., R. Co.* (1912), 177 Ind. 463, 468, 96 N. E. 700, 40 L. R. A. (N. S.) 963; 4 Thompson, Negligence §4065. "The servant's implied assumption of risks, which

accompanies and is a part of the contract of 3. hiring, is confined to the particular work or class of work for which he is employed, and if the master orders him temporarily to do other work, involving different or greater dangers than those incident to the work within the scope of his employment, he will not by obeying such orders necessarily assume the risks incident to such other work. When such change of employment takes place, the master owes the duty of warning the servant of the dangers incident to the work so required of him, and likewise the duty of giving him instructions, where he is not familiar with the new duties to which he is so assigned. Where the master knows the servant so intrusted with new duties involving other or greater hazards is inexperienced in such work, and ignorant of the dangers incident thereto, the duty to warn and instruct is imperative, and failure to do so makes him liable for any injury resulting from such failure, where the servant has not negligently contributed thereto." *Osborn* v. *Adams Brick Co., supra,* 183. See, also, *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151, 164, 5 N. E. 187; *Republic Iron, etc., Co.* v. *Ohler, supra,* 403; *Newcastle Bridge Co.* v. *Doty* (1907), 168 Ind. 259, 264, 79 N. E. 485; *Cincinnati, etc., R. Co.* v. *Madden* (1893), 134 Ind. 462, 471, 34 N. E. 227; *Vandalia Coal Co.* v. *Price* (1912), 178 Ind. 546, 97 N. E. 429; *Chicago, etc., R. Co.* v. *Schenkel* (1914), 57 Ind. App. 175, 104 N. E. 50.

Appellant, however, contends that because the complaint states that appellee was *transferred* to another department, that it does not show that 4. appellee was injured while temporarily performing work not connected with his regular employment, but in fact shows that appellee was engaged in his regular employment when injured. We do not think that either paragraph of the com-

plaint, when read in its entirety, is open to such a construction. On the contrary, we think it reasonably clear that each paragraph proceeds on the theory that appellee was taken from his regular employment and "*required*" to perform work in the performance of which he had no previous experience, and that such new work exposed him to dangers of which he was wholly ignorant, and that appellant when making such transfer failed and neglected to give appellee any notice or warning of his new dangers, or any instructions as to the manner of performing such work. In the case of *Pittsburgh, etc., R. Co.* v. *Adams, supra,* 166, the Supreme Court said: "When, by order of the master, the servant is carried beyond his employment, he is carried away from his implied undertaking to assume the risks incident to the employment." We are of the opinion, however, that either paragraph of the complaint, and especially the second paragraph, is good, even though we give to the word "transferred" the meaning insisted on by appellant. The complaint avers facts which show that the work of carrying and handling the kind of glass which appellee by his new work was required to handle in the manner and under the conditions which he was required to handle it, exposed appellee to unusual dangers not ordinarily incident to such work; that appellant knew such fact, and that appellee did not. Under the authorities, these averments were sufficient to show that there was imposed on appellant at the time of the transfer of appellee, even though such transfer was to be permanent, the duty of giving some notice or warning of such unusual danger, the risk of which, in the absence of knowledge thereof, would not have been contemplated, or assumed by an employe, originally employed in such department of work. "In cases where an employe is required to

work among latent or hidden dangers known to the employer, but unknown to the employe, it would be the legal duty of the employer, having knowledge of such hidden dangers, to disclose them to the employe." The language just quoted is an instruction approved by the Supreme Court in the case of *Salem Stone, etc., Co.* v. *Griffin* (1894), 139 Ind. 141, 148, 38 N. E. 411. In discussing an objection to this instruction urged on the ground that it ignored the assumption of risk the Supreme Court on page 148 said: "Implied assumptions of risk are only such as are naturally incident to the service and those which are known or which ordinary care would discover and which are disregarded by the servant. Those dangers which are unknown to the servant, and not discoverable by him with ordinary care, but which are, or by ordinary care of the master should be, known to him, are not assumed. Of such the master is in duty bound to notify his servant and this at the peril of answering in damages." To the same effect, see, *Louisville, etc., R. Co.* v. *Wright* (1888), 115 Ind. 378, 16 N. E. 145, 17 N. E. 584, 7 Am. St. 432; *St. Louis, etc., R. Co.* v. *Valirius* (1877), 56 Ind. 511; *Republic Iron, etc., Co.* v. *Ohler, supra*; *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583, 66 N. E. 454; *Atlas Engine Works* v. *Randall, supra.*

The second paragraph of complaint is even stronger than the first, because it contains the additional averment that the appellant knew that appellee was without experience in the new work, and ignorant of its dangers. This averment would make the complaint sufficient to require notice and warning of the dangers, even though there was a new employment for the new work and the dangers were only such as were usually incident to the employment. *Consolidated Stone Co.* v. *Summit, supra; Kingan &*

*Co.* `v.` *Foster* (1913), 53 Ind. App. 511, 102 N. E. 103; *Osborn* v. *Adams Brick Co.,* *supra; Republic Iron, etc., Co.* v. *Lulu, supra; Republic Iron, etc., Co.* v. *Ohler, supra.* In the case of *Consolidated, Stone Co.* v. *Summit, supra,* 302, the Supreme Court said: "The mere fact that a servant may know or could have known of a defect by the exercise of ordinary care does not necessarily charge him with an assumption of the risks growing out of such defect, because the risks and hazards on account thereof may not be so open and apparent as to be appreciated by him, on account of his ignorance or want of experience."

Each of the paragraphs states facts sufficient to show that appellant owed to appellee a duty to warn him of the dangers of the work which it required him to perform and hence contains the element necessary to a good complaint, first above indicated. It is not seriously contended by appellant that there is an absence from the complaint of the other two necessary elements, showing that the warning was not given and that appellee's injuries resulted from the failure to give it. It follows that the demurrer to each paragraph of complaint was properly overruled.

Appellant insists that its motion for judgment on the answers to interrogatories notwithstanding the general verdict should have been sustained for the reason that such answers show that appellee was a person of mature years; that he possessed ordinary intelligence and was a man of experience and knew that glass when being handled is liable to break, and that if it should break the sharp edges thereof are liable to cut one; that the defects consisted of stones in the glass which came necessarily in the manufacture thereof and that the breaking of glass from their presence and from

other causes is a common occurrence; that it was not customary in glass factories for employers to furnish, or employes to use, gauntlets or other protection for the wrists when handling glass; that if there was any defect in this glass it was a concealed defect. Under the issues tendered by the complaint appellee might have proven, and for the purposes of the question under consideration the general verdict is a finding, that he did prove an extremely rotten and brittle condition of the glass, not ordinarily incident thereto, and that appellee was required to handle it under conditions of temperature that made it unusually liable to break. The answers to interrogatories are not inconsistent with this finding and they fail to show that appellee was familiar with the handling of glass or the dangers incident thereto; but on the contrary show that appellee lacked knowledge and experience in such respect. A general verdict was a finding in favor of appellee of all the essential facts necessary to sustain his cause of action, and under the rule governing a conflict between the general verdict and answers to interrogatories, so frequently announced by this and the Supreme Court, the court did not err in overruling such motion.

Complaint is made of instruction No. 5 given by the court on its own motion. Such instruction is as follows: "Before the plaintiff in this cause is entitled to recover, he must establish by a fair preponderance of all of the evidence: First. That he received the injuries or some part of the injuries set forth in his complaint. Second. That said injuries were directly, or proximately caused by the negligence or carelessness of the defendant in some one or more of the ways charged and set out in his complaint. If both of said proposi-

tions are established by a preponderance of the evidence, then plaintiff would be entitled to recover in some amount, as shown by the evidence, unless you should further find from a fair preponderance of all the evidence that the plaintiff himself, was guilty of negligence which contributed to his injuries, and in which case he would not be entitled to recover." It is true, as appellant contends, that this instruction makes no express mention of assumption of risk, but it does tell the jury that before it would be authorized in finding for appellee it must find that his injuries were directly or proximately caused by the negligence or carelessness of appellant, in some one or more of the ways charged and set out in his complaint. The character of the negligence charged, on which the verdict was evidently based, was such that before appellee's proof thereof could be complete he must have shown a state of facts that would necessarily relieve him from assumption of risk. The answers to interrogatories show that the verdict was not based on appellant's failure to furnish appellee with gauntlets, and further show that appellee was without experience in the handling of glass and ignorant of the dangers incident thereto. It therefore affirmatively appears from the record that no possible harm could have resulted from the giving of this instruction.

Instruction No. 2 given at appellee's request is objected to by appellant as being outside the issues. For reasons indicated in our discussion of the sufficiency of the complaint we think such objection untenable.

Complaint is made of instruction No. 3, given at request of appellee. This instruction is as follows:

"While it is the general rule that a servant assumes all the ordinary risks incident to the work which he is employed to do, and those

Marietta Glass Mfg. Co. *v.* Bennett—60 Ind. App. 435.

risks which are open to observation and obvious and can be seen and appreciated by a person of ordinary intelligence; yet he does not assume the extraordinary risks of which he is ignorant and which are not obvious and open to the observation and which cannot be readily seen and appreciated by a person of ordinary intelligence. So that if you find from all the facts and circumstances as shown by the evidence in this case, that the danger encountered by plaintiff, if any, in carrying and handling said glass was an extraordinary danger and one which was not open and obvious and could not have been readily seen and appreciated by a person of ordinary intelligence; then I instruct you that the plaintiff did not assume such risk so as to prevent him from recovering damages in this case." It is claimed that this instruction is erroneous in that it omitted the question of actual knowledge on the part of the appellee of the dangers complained of. The latter clause of the instruction standing alone might be open to such construction, but, when read in its entirety, the instruction could not have misled the jury. In any event, appellant was not harmed by its giving, for the reason that the jury in its answers to interrogatories expressly found that appellee did not know of the dangers of handling glass, and that *this ignorance was due to lack of experience and knowledge.*

Instruction No. 4, which is also complained of, is as follows: "If you find from the evidence that the plaintiff was required, ordered and directed by the defendant to carry and handle large plates of glass and that said glass was rotten, defective and unusually brittle, dangerous and liable to break in handling, and that the defendant knew or should have known such facts, and

that the plaintiff was ignorant thereof and had no notice or warning thereof, and that while plaintiff was carrying and handling said glass and using due care in the handling of the same and due care for his own safety, the said glass broke on account of its said rotten, defective and unusually brittle condition, and thereby injured plaintiff as alleged in the complaint; then I instruct you that the defendant would be liable for such injuries." It is claimed that this instruction is erroneous in that it omits the question whether appellant knew of appellee's alleged ignorance of the danger and for the further reason that it seems to declare that appellee might have been ignorant of the fact that ordinary glass will break. The instruction is not open to the second objection, and, for the reason indicated in our discussion of the sufficiency of the first paragraph of the complaint, the omission therein of the element of appellant's knowledge of appellee's inexperience, in view of the other elements of the instruction does not render it subject to criticism. A servant *may* obey a specific command of the master and go into a dangerous place and perform a dangerous task without assuming the risk of so doing, "unless the apparent danger is such as to deter a man of ordinary prudence from encountering it." *Mellette* v. *Indianapolis, etc., Traction Co.* (1910), 45 Ind. App. 88, 96, 86 N. E. 432; *Brazil Block Coal Co.* v. *Hoodlet* (1891), 129 Ind. 327, 334, 27 N. E. 741; *Cincinnati, etc., R. Co.* v. *Madden* (1893), 134 Ind. 462, 34 N. E. 227.

Instruction No. 7 relates to the furnishing of appliances to the servant for handling glass. Such instruction, if erroneous, was harmless for the reason that the jury by its answers to interrogatories, found in effect that it was not the duty of the employer to furnish such appliances.

*Huber* v. *Beck* (1892), 6 Ind. App. 484, 485, 33 N. E. 985; *Muncie Pulp Co.* v. *Koontz* (1904), 33 Ind. App. 532, 539, 70 N. E. 999; *New York, etc., R. Co.* v. *Lind* (1913), 180 Ind. 38, 102 N. E. 449; *Pittsburgh, etc., R. Co.* v. *Broderick* (1914), 56 Ind. App. 58, 102 N. E. 887.

Instruction No. 9 of which complaint is made, reads: "It is the duty of a servant to obey the orders and directions of the master, or his duly authorized agent or foreman, and said servant has the right to presume, and to act upon the presumption, in the absence of notice or knowledge to the contrary, that the master or his agent or foreman, will not order him into a place of danger, or to perform dangerous work without his notifying him of such danger, and if the master or his duly authorized agent or foreman, does order said servant to do certain specified work, then said servant has the right to presume, in the absence of knowledge or notice to the contrary, that it is reasonably safe for him to obey such orders and to perform said work and that he is encountering no unusual dangers by doing so." It is claimed by appellant that this instruction is erroneous in that it ignores the fact that every one is chargeable with knowledge that glass is brittle and liable to break. The instruction is not open to this criticism, but on the contrary is a correct expression of a general proposition of law applicable to the issues and the evidence in this case.

The refusal of the court to give instructions Nos. 8 and 10 tendered by appellant is next urged as error. These instructions in so far as they were pertinent and applicable to the issues and the evidence were covered by other instructions given.

It is insisted that the evidence is not sufficient to sustain the verdict. There was some evidence tend-

ing to show that at the particular time of the day when appellee was injured the glass would get low in the pots, and would contain particles of sand and clay which had settled to the bottom of the pots; that such particles of clay and sand, when present in the glass would render it rotten and brittle and much more liable to break, especially when exposed to currents of cold air; that some of the window lights were out of the windows in the lehr room and such room was cold on the day in question; that it was because of such conditions that the glass in question broke; that appellee, the day before his injury, was temporarily transferred from the work of making boxes to that of handling the plates of glass; that he had no experience in his new work, and because thereof objected to being transferred to such work; that the man whom appellee assisted in the handling of said glass made objections to appellant to working with appellee because of his lack of experience; that appellant, at the time it transferred appellee to such new work, gave him no warning of any kind as to any dangers incident to such new work, and no advice or directions as to the performance of such work. Where there is some evidence to support each of the material facts on which the verdict rests, this court will not reverse on the ground of insufficiency of evidence.

Appellant's next objection relates to the admission of evidence. Appellee's father-in-law was a witness and testified that appellee prior to his injury worked for him—"laid brick and helped to do cement work, helped set cement blocks." The witness was then asked "About how much did he make at that business?" There was no objection to this question until the witness had made partial answer, as follows: "Well I took him in as partner after the first two or three months." At

Marietta Glass Mfg. Co. *v.* Bennett—60 Ind. App. 435.

this point the appellant interposed an objection "to the question and answer of the witness thereto," which objection was overruled, and the witness continued with the answer as follows: "Well, he run on a average of four dollars a day." As before indicated, there was no objection made to the question before the answer was begun and none was made after the answer was completed. There was no motion to strike out the answer or any part of it. It follows that no question is presented by the record. We might add that proof of appellee's ability to earn money before his injury was not confined to the particular work he was doing when injured. *Evansville Furn. Co.* v. *Freeman* (1915), 57 Ind. App. 576, 105 N. E. 258, 107 N. E. 27, and cases cited.

Finding no available error in the record, the judgment of the lower court is affirmed.

NOTE.—Reported in 106 N. E. 419. As to care required of master under law of master and servant, see 98 Am. St. 290. As to the master's duty to warn or instruct servant as to danger to which he is exposed, see 41 L. R. A. 143; Ann. Cas. 1914 A 609. On the master's duty to warn or instruct servant, generally, see 44 L. R. A. 33; 39 L. Ed. U. S. 465. As to the servant's assumption of risk in attempting dangerous work in obedience to orders without fully appreciating the danger, see 4 L. R. A. (N. S.) 838. For the servant's assumption of risk from latent danger or defect, see 17 L. R. A. (N. S.) 76. As to when risks of work outside scope of employment are deemed to be assumed by servant, see 48 L. R. A. 803. On the general question of the servant's assumption of risk see 38 L. Ed. U. S. 391. As to the assumption of risk by a servant in performing an act under the orders of the master, see 7 Ann. Cas. 435. See, also, under (1) 29 Cyc 419; (2) 26 Cyc 1173; (3) 26 Cyc 1172, 1205; (4) 26 Cyc 1393; (5) 26 Cyc 1172, 1219; (6) 26 Cyc 1201; (7) 26 Cyc 1513; (8) 38 Cyc 1815; (9) 26 Cyc 1503; (10) 26 Cyc 1505, 1506; (11) 26 Cyc 1221; (12) 38 Cyc 1815; (13) 26 Cyc 1182; (14) 38 Cyc 1711; (15) 3 Cyc 348; (16) 38 Cyc 1390, 1401; (17) 13 Cyc 202.