WAMESIT NATIONAL BANK *vs.* ROSE MERRIAM.

WAMESIT NATIONAL BANK *vs.* DELILAH RIPLEY.

Knox.   Opinion February 16, 1916.

*Agency.   Bills and notes.   Construction of Rule X, Supreme Court.
Contract between indorser and indorsee of promissory note.
Meaning of words, "signature" and "execution."*

Actions of assumpsit by the indorsee of two promissory notes against the indorser in each who was also the payee. The declaration in each case alleged that the note in question was signed by Eugene G. Russell, by Arthur P. Wedge, Atty. and made payable to the defendant, and that the defendant on the same day indorsed and delivered said note to the plaintiff.

The defendants objected to the introduction of the note in evidence, claiming that before doing so, it was incumbent upon the plaintiff to prove that Arthur P. Wedge was authorized to sign in behalf of the maker. No affidavit denying signature or execution under Rule X was filed by defendant.

*Held:*

1. That Rule X is not involved in this case.

2. In a suit by an indorsee against an indorser who is also the payee, the latter is estopped from denying the genuineness of the maker's signature or the validity of the promise. By indorsing the note and delivering it to the indorsee, the indorser guarantees both its genuineness and validity.

3. Rule X, when invokable, applies both to the genuineness of a signature and its authorization.

Actions of assumpsit by indorsee of two promissory notes against the indorser in each, who was also the payee. Plea, general issue. Plaintiff offered notes. Defendant seasonably objected to the notes as evidence on the ground that they did not correspond with the declaration, claiming that inasmuch as the plaintiff had alleged in its declaration that the notes declared on were signed by one Eugene G. Russell, by one Arthur P. Wedge, attorney, it was incumbent upon plaintiff to prove said agency. Plaintiff contended that the defendant was estopped, because no affidavit had been filed as

required by Court Rule X. Objections of defendant overruled by presiding Justice. Verdict ordered for plaintiff, to which ruling defendant filed exceptions. Exceptions overruled.

Case stated in opinion.

*Arthur Ritchie,* for plaintiff.

*Rodney I. Thompson,* for defendants.

SITTING: SAVAGE, C. J., CORNISH, KING, HANSON, PHILBROOK, JJ.

CORNISH, J. Actions of assumpsit by the indorsee of two promissory notes against the indorser in each who was also the payee. Both cases involve the same points and will be treated as one.

The declaration in each case alleges that the note in question was dated September 2, 1911, for the sum of three hundred dollars, payable four months after date, signed Eugene G. Russell by Arthur P. Wedge his Atty., and payable to the defendant, and that the defendant thereafterward on the same day indorsed and delivered said note to the plaintiff. The defendants in these suits objected to the introduction of the .note in evidence by the plaintiff claiming that it was incumbent upon the plaintiff before doing so to prove that Arthur P. Wedge was authorized to sign in behalf of the maker, although no affidavit denying signature or execution had been filed by the defendant under Rule X of the court. Defendant also claimed that the word "Atty" after the name Arthur P. Wedge was a matter of description only.

The presiding Justice overruled both objections, admitted the note in evidence and directed a verdict for the plaintiff. Defendants' exceptions to this ruling bring the cases to this court.

So far as this rule of court is concerned, it is not involved in this case. Neither Rose Merriam nor Delilah Ripley denied the genuineness nor the authenticity of her signature. If they had, the rule would have applied. But they attempted to set up as an issue, in a suit brought against them as indorsers, the authenticity of the signature of the original maker of the note, that is the agency of Wedge to execute the same in behalf of Russell. This was not open to them. This is not an action against the maker on the original note, the original contract, but by an indorsee against its indorser under the contract of indorsement which is an entirely

new contract and distinct from the original.  By indorsing a note and delivering it to an indorsee the indorser guarantees both the genuineness of the instrument and the validity of the promise.  So far as the indorsee is concerned the indorser engages that the obligation is genuine and legal as it purports to be.  He is estopped from denying either its genuineness or its validity in a suit brought by the indorsee against him.  It may be rank forgery, or the promise may be invalid as ultra vires, yet the indorser's liability is unaffected thereby.  *Furgerson* v. *Staples,* 82 Maine, 159; *Willis* v. *French,* 84 Maine, 593.  The indorser further assumes a conditional liability. He promises that he will pay the note according to its tenor, that is upon proper presentment, demand and notice.  It is the breach of this promise which is the ground of the present action, and whether or not Wedge had authority to sign as agent or attorney for the maker, Russell, on the original note is entirely immaterial here. The objections were therefore properly overruled, the notes properly received in evidence, and as no defense seems to have been offered by the indorsers, a verdict for the plaintiff was properly directed in each case.

However, lest our silence may be misconstrued as adopting the construction given to Rule X by the learned counsel for the defendant, and in order to settle a matter of practice, it may not be improper to add that in our opinion Rule X applies both to the genuineness and to the authorization of a signature.  As originally adopted in 1822 the terms were as follows: "In actions on promissory notes, orders, or bills of exchange, the counsel for the defendant will not be permitted to deny at the trial the genuineness of the defendant's signature, unless he shall have been epecially instructed by his client that the signature is not genuine, or unless the defendant, being present in court, shall deny the signature to be his or to have been placed there by his authority."  Rule XXXIII, 1 Maine, 421.  This covers the question of agency or authorization as well as genuineness in explicit terms.  The purpose of the rule was to prevent delay and to save unnecessary expense.  *McDonald* v. *Bailey,* 14 Maine, 101; *Libby* v. *Cowan,* 36 Maine, 264; and this reason applies with equal force to the genuineness of the signature purporting to be that of the defendant himself and to its authorization when made by another.  The present Rule X contains the same

requirement as the original but in abbreviated language, viz: "No party shall be permitted at the trial of any cause to call for the proof of the signature or execution of any paper," etc. "Signature" refers to genuineness as before, but "execution" in the present rule covers the authorization specified in the original. To deny the execution of an instrument is to deny its making, whether by one's own hand or the hand of another. To "sign," one must subscribe in his own handwriting, to "execute" he may use the hand of another. Both words are used in the present rule with the evident purpose of covering both situations. "To say that A 'signed' a note and that he 'executed' a note, as usually understood, may mean very different things. The former conveys the meaning that the act of signing was performed personally by the maker, while the latter imports that the maker either signed it himself, or authorized another to sign for him. The words are by no means equivalent." *Brems* v. *Sherman,* 158 Ind., 300, 63 N. E., 571-2.

The New Hampshire court held in an early case that a similar rule in that State includes the denial of agency as well as genuineness of signature. *Williams* v. *Gilchrist,* 11 N. H., 535.

*Exceptions overruled.*